UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUART SIMPSON, Individually on Behalf of Himself and Derivatively on Behalf of Nominal Defendant AMERICAN REALTY CAPITAL – RETAIL CENTERS OF AMERICA, INC., <br><br>      Plaintiff,<br><br>  v.<br><br>LESLIE D. MICHELSON, EDWARD G. RENDELL, and EDWARD M. WEIL, JR.,<br><br>      Defendants,<br><br>  and<br><br>AMERICAN REALTY CAPITAL – RETAIL CENTERS OF AMERICA, INC.<br><br>      Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:16-cv-03970-ALC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF NOTICE <u>AND SCHEDULING OF FINAL APPROVAL HEARING</u>**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| III. | PROCEDURAL HISTORY OF THE ACTION | 6 |
| IV. | THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT | 7 |
|  | A. Legal Standard for Preliminary Approval | 7 |
|  | B. The Proposed Settlement Serves the Interests of RCA and RCA Stockholders | 8 |
|  |     1. The Proposed Settlement Preserves Important Stockholder Protections | 8 |
|  |     2. The Settlement Unbundled the Proposed Amendments, Also Benefitting RCA Stockholders | 9 |
|  | C. The Proposed Settlement is the Product of Non-Collusive Negotiations by Experienced Counsel | 10 |
| V. | THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE | 10 |
| VI. | THE COURT SHOULD ORDER THE SCHEDULE AS SET FORTH IN THE PROPOSED ORDER PRELIMINARILY APPROVING SETTLEMENT AND SETTING SETTLEMENT HEARING | 11 |
| VII. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................................7

*Donoghue v. CSX Corp.*,
   No. 08 Civil 9252 (MGC), 2009 WL 750232 (S.D.N.Y. Mar. 9, 2009) ................................11

*Greenlight Capital, L.P. v. Apple, Inc.*,
   No. 13 Civ. 900 (RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) ........................................9

*In re AOL Time Warner S'holder Derivative Litigation*,
   No. 02 Civ. 6302 (SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .................................8

*In re Fab Universal Corp. S'holder Derivative Litig.*,
   No. 14 Civ 687 (RWS), 2015 WL 7299773 (S.D.N.Y. Nov. 17, 2015) ...................................9

*In re Metro. Life Derivative Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996) ...............................................................................11

*In re Pfizer Inc. S'holder Derivative Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011)..............................................................................8

*In re State Street Bank & Trust Co. ERISA Litig.*,
   No. 07 Civ. 8488 (RJH), 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009)...............................7, 8

*Torres v. Gristede's Operating Corp.*,
   No. 04–CV–3316 (PAC), 2010 WL 2572937 (S.D.N.Y. June 1, 2010).............................8, 10

**RULES**

Fed. R. Civ. P. 23.1(c) ....................................................................................................7

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth Ed. § 13.14 ....................................................................7

Plaintiff Stuart Simpson ("Plaintiff"), by his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Preliminary Approval of Settlement, Approval of Notice and Scheduling of Final Approval Hearing (the "Motion"). In his Motion, Plaintiff requests the Court enter an order: (1) granting preliminary approval of the proposed Settlement (the "Settlement") of the above-captioned individual and shareholder derivative action (the "Action"); (2) approving the form and manner of notice ("Notice") to be provided to the stockholders of nominal defendant American Realty Capital – Retail Centers of America, Inc. ("RCA" or the "Company"); and (3) scheduling a final settlement approval hearing (the "Final Settlement Hearing"). In the interest of settlement, this Motion is unopposed by Defendants.[1] However, Defendants have denied, and continue to deny, the allegations in Plaintiff's complaint and Defendants do not join in Plaintiff's characterization of the facts as set forth below.

## I.  INTRODUCTION

The proposed Settlement should be preliminarily approved because it provides substantial benefits to RCA and its stockholders. Indeed, the Settlement provides full relief to RCA and its stockholders for the claims asserted by Plaintiff in the Action.

This litigation arose from Plaintiff's challenge to Defendants' alleged violations of the federal securities laws in connection with RCA's Definitive Proxy on Schedule 14A, filed with the Securities and Exchange Commission on April 29, 2016 (the "Proxy"). The Proxy solicited RCA stockholders to approve nine amendments to RCA's Articles of Amendment and Restatement (the "Charter"), the document that governs the rights of RCA stockholders in this non-publicly traded real estate investment trust ("REIT"). Plaintiff alleged that certain of the

---

[1] Defendants are the members of RCA's Board of Directors (the "Board"), Leslie D. Michelson, Edward G. Rendell, and Edward M. Weil, Jr., and nominal defendant RCA.

Proxy's proposed Charter amendments would have eliminated valuable stockholder rights and protections that would be implicated in a merger of RCA into another entity (the "Proposed Amendments"). At the same time that Defendants solicited stockholder approval of the Proposed Amendments, however, they failed to disclose that Defendants had *already* begun negotiations to merge RCA into another affiliated REIT. Indeed, at the time that Defendants misleadingly solicited stockholders to approve the Proposed Amendments, they had already begun merger discussions with American Finance Trust, Inc. ("AFT"), a sister REIT that, like RCA, is controlled by AR Global Investments, LLC ("AR Global"). The RCA-AFT merger would have implicated the protections being eliminated by the Proposed Amendments (the "Proposed Merger"). Thus, this lawsuit sought to force Defendants to disclose that the Proposed Amendments were not being proposed in a vacuum; rather, they were part of an undisclosed merger plan. The Proposed Amendments also improperly bundled separate and distinct matters to be voted on within the same proposal, such that RCA stockholders would have had to vote for or against all of the matters as a package in violation of 17 C.F.R. § 240.14a-4(a)(3) and § 240.14a-4(b)(1), which protect stockholders' rights to approve, disapprove or abstain on each separate matter submitted to a stockholder vote.

Plaintiff commenced this litigation by filing a verified individual and shareholder derivative complaint (the "Complaint") challenging Defendants' conduct under Section 14(a) of the Securities Exchange Act. Plaintiff promptly moved to enjoin the RCA stockholder vote until and unless Defendants told RCA stockholders about the Proposed Merger and that the Proposed Amendments would eliminate important rights in the face of such a transaction. Along with his preliminary injunction papers, Plaintiff attached a declaration from Robert J. Froehlich, a former director of Realty Finance Trust, Inc. ("RFT"), another sister REIT under the AR Global

umbrella, who had specific knowledge of the pending merger discussions among the various AR Global-controlled REITs.

In the Settlement, Defendants agreed to withdraw the Proposed Amendments from the RCA stockholder vote in their entirety. In case Defendants had some "back door" idea for removing the protections guaranteed by RCA's Charter, Defendants further agreed not to seek to modify the Company's Charter to effectuate the Proposed Amendments in the future without seeking stockholder approval. The Settlement therefore stopped Defendants' scheme in its tracks and ensured that Defendants would not be able to propose a similar merger in the future without stockholders being informed of their rights under the Charter.

In determining whether to preliminarily approve the Settlement, the Court need only determine whether the Settlement falls within a range of reasonableness – that is, whether the Settlement is in the interests of RCA and its stockholders and was the product of arm's-length negotiations free from collusion. If the Settlement meets this standard, which it easily does here, then the Court should order notice of the Settlement and its terms be disseminated to RCA stockholders to permit them to comment on the Settlement at a final fairness hearing before the Court during which the Court will determine whether the Settlement is fair, reasonable and adequate. Because the Settlement provides substantial benefits to RCA and its stockholders, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, order dissemination of the Notice to RCA stockholders and schedule a Final Settlement Hearing.

## II. FACTUAL BACKGROUND

Nominal defendant RCA is a non-publicly traded REIT that was formed by its sponsor, American Realty Capital IV, LLC (the "Sponsor"), which is wholly-owned and controlled by AR

Global. Compl. at ¶ 3.[2] RCA is managed by its advisor, American Realty Capital Retail Advisor, LLC (the "Advisor"), which generates fees by directing or performing RCA's daily business and which employs RCA's executive officers. *Id*. RCA's Advisor, like its Sponsor, is wholly-owned and controlled by AR Global. *Id*.

On April 29, 2016, RCA filed the Proxy soliciting RCA stockholders to approve nine amendments to RCA's Charter at the Company's Annual Meeting of stockholders on June 29, 2016 (the "Annual Meeting"). Compl. at ¶ 2. The Proxy included Proposal Nos. 8 and 11.

Proposal No. 8 asked stockholders to approve the elimination of Charter provisions that would be triggered in the event of a "roll-up transaction," defined a as a merger or acquisition in which RCA stockholders would receive shares of a non-traded entity (the "Roll-Up Protections"). *Id*. at ¶¶ 30, 33. The Roll-Up Protections gave RCA stockholders the right of independent appraisal and to elect to receive the cash value of their shares instead of the stock consideration that would necessarily otherwise be received in a roll-up transaction. *Id*. at ¶ 31. The Roll-Up Protections would also prohibit Defendants from pursuing a roll-up if stockholders' voting rights and rights to inspect the corporate records of the new roll-up entity would be inferior to their rights under RCA's Charter. *Id*. at ¶ 35.

Proposal No. 11 asked stockholders to approve the elimination of provisions of RCA's Charter that would protect RCA stockholders in transactions between RCA and an affiliated company (the "Conflicts of Interest Protections"). *Id*. at ¶¶ 36-40. Under the Charter, a transaction with an affiliated company would include a transaction with another REIT that is effectively controlled by the same managing advisor entity. *Id*. at ¶¶ 36-37. Here, since both RCA and AFT's advisors are wholly-owned by AR Global, the Proposed Merger would

---

[2] References to paragraph(s) of the Complaint (Dkt. No. 1) are cited as "Compl. at "¶_."

constitute a conflicted transaction.  *Id*.  The Conflicts of Interest Protections, among other things, prohibit the Defendants from engaging RCA in a transaction with an affiliated company on terms that are less than fair market value.  *Id*. at ¶ 40.

Proposal No. 11 also asked stockholders to approve the elimination of Charter provisions that limit RCA's Advisor's control of the Company (the "Advisor Protections").  *Id*. at ¶¶ 41-49.  The Advisor Protections place caps on the length of RCA's Advisor's contract with RCA and the amount of fees RCA's Advisor can generate in connection with services rendered to RCA – including in a Roll-Up Transaction.  *Id*.  The Advisor Protections also establish a fiduciary duty of RCA's Advisor to RCA and its stockholders.  *Id*.

The Proxy, however, failed to disclose that Defendants were negotiating a Roll-Up Transaction of RCA – and had been since March 2016.  *Id*. at ¶ 7.  Specifically, the Proposed Merger involved AFT acquiring RCA, RFT, American Realty Capital Healthcare Trust III, Inc. ("HT III"), and Healthcare Trust, Inc., each of which is a non-traded REIT with a wholly-owned AR Global advisor. *Id*.  Like RCA, on April 29, 2016, each of RFT and HT III also filed Definitive Proxy Statements on Schedule 14A soliciting their stockholders' approval of the elimination of charter provisions that would be implicated in the Proposed Merger.  *Id*. The Proxy, thus, failed to disclose that the Defendants sought to eliminate the very Charter protections that would be invoked in the undisclosed Proposed Merger.  *Id*.

The Proxy also bundled separate matters together, such that stockholders would have been forced to vote for or against them all as a package.  Proposal No. 8 bundled seven separate matters together, including the elimination of the Roll-Up Protections with the stockholder-friendly elimination of the Charter's investment limitations.  *Id*. at ¶¶ 61-62.  The Proxy similarly bundled four separate matters under Proposal No. 11.  *Id*. at ¶¶ 65-66.

## III. PROCEDURAL HISTORY OF THE ACTION

On May 26, 2016, Plaintiff filed the Complaint, alleging that Defendants violated Section 14(a) of the Securities Exchange Act. (Dkt. No. 1). Plaintiff specifically alleged that Defendants violated Rule 14a-9 by issuing a false and misleading Proxy that failed to disclose (i) that the Defendants were negotiating RCA's merger into AFT and (ii) that eliminating the Charter protections as provided for in Proposal Nos. 8 and 11 of the Proxy would facilitate the merger of RCA into AFT. Plaintiff further alleged that Defendants violated Rules 14a-4(a)(3) and 14a-4(b)(1) by issuing the Proxy which impermissibly bundled seven separate Charter amendments to be voted on under Proposal No. 8, and four separate Charter amendments to be voted on under Proposal No. 11, such that RCA stockholders would have been forced to vote on these matters as a package in violation of their rights to approve, disapprove or abstain on each separate matter submitted for stockholder approval. Compl. at ¶¶ 70-78.

On June 1, 2016, Plaintiff moved to enjoin the RCA stockholder vote at the Annual Meeting until and unless Defendants cured the allegedly materially misleading and deficient Proxy disclosures and unbundled the Proposed Amendments. (Dkt. Nos. 7-10). On June 2, 2016, the Court entered an order setting a hearing for Plaintiff's Motion for Preliminary Injunction. (Dkt. No. 11). Settlement discussions began shortly thereafter.

On June 8, 2016, the parties executed a Memorandum of Understanding ("MOU") to resolve the litigation. Pursuant to the MOU, Defendants agreed to withdraw the Proposed Amendments from stockholder consideration at the Annual Meeting and not seek to modify the Company's Charter to effectuate the Proposed Amendments in the future without seeking stockholder approval.

After executing the MOU, the parties negotiated the terms of a definitive settlement agreement (the "Stipulation"), which was executed on September 7, 2016.³ Among other things, the parties negotiated an agreed-to award of attorneys' fees and expenses ("Fee and Expense Award") for Plaintiff's counsel of $750,000, to be paid by RCA or its insurer, to compensate Plaintiff's counsel for its efforts in securing the Settlement benefits.

Plaintiff now seeks preliminary approval of the Settlement, so that Notice can be disseminated to RCA's stockholders in advance of a Final Approval Hearing. At that hearing, after RCA's stockholders have been given the opportunity to weigh in on the Settlement and the Fee and Expense Award, Plaintiff will seek approval of the Settlement.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A. Legal Standard for Preliminary Approval

Rule 23.1 of the Federal Rules of Civil Procedure instructs that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). Courts considering a proposed settlement under Rule 23.1 engage in a two-step process. First, the Court determines whether the proposed settlement merits preliminary approval and, if it does, the Court directs that notice of the proposed settlement be distributed to the company's stockholders, thereby providing company stockholders with the opportunity to object to the settlement. Second, the Court evaluates whether final approval of the settlement is warranted and, if so, grants final approval. *See* Manual for Complex Litigation, Fourth Ed. § 13.14; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).

At the preliminary approval stage, the Court need only decide if the proposed settlement "fits within the range of possible approval." *See In re State Street Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488 (RJH), 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) (quoting *In re*

---

³ The Stipulation is attached hereto as Ex. 1.

*Prudential Secs. Inc. Ltd. P'ships Litig*, 163 F.R.D. 200, 209-10 (S.D.N.Y. 1995)).[4] Stated differently, the Court need only determine whether "probable cause" exists to notify a company's stockholders of the proposed settlement and proceed to a fairness hearing. *See Torres v. Gristede's Operating Corp.*, No. 04–CV–3316 (PAC), 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (citations omitted). The Court need not answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. *State Street*, 2009 WL 3458705, at *1.

A proposed settlement falls within the range of possible approval if it (1) serves the interests of the corporation on whose behalf the litigation was instituted and (2) appears to be the product of informed and non-collusive negotiations. *AOL Time Warner*, 2006 WL 2572114, at *2-3. The Court gives deference to the parties' negotiations, because the parties are uniquely positioned to know the merits of the case. *Torres*, 2010 WL 2572937, at *2 (citations omitted).

### B. The Proposed Settlement Serves the Interests of RCA and RCA Stockholders

The substantive benefits conferred on RCA and its stockholders by the Settlement provide full relief to the claims set forth in Plaintiff's Complaint. As such, the Settlement "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted" and is appropriate for preliminary approval. *AOL Time Warner*, 2006 WL 2572114, at *3 (citations omitted).

#### 1. The Proposed Settlement Preserves Important Stockholder Protections

Withdrawing the Proposed Amendments preserved important Charter protections that would be triggered by the Proposed Merger. As a result of the Settlement, if Defendants wish to

---

[4] The standards applicable to the preliminary approval of shareholder class actions under Rule 23(e) and shareholder derivative actions under Rule 23.1(c) are the same. *See In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340-41 (S.D.N.Y. 2011) (derivative action applying factors set forth in a class action); *In re AOL Time Warner S'holder Derivative Litigation*, No. 02 Civ. 6302 (SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (same).

consummate the Proposed Merger, they will either need to let RCA stockholders exercise their rights under the Charter, or propose Charter amendments while also disclosing their intent and purpose. This helps ensure that any newly proposed merger will be at fair market value.

The Settlement preserves these benefits into the future, and does not allow the Defendants to eliminate the Roll-Up Protections, Conflicts of Interest Protections or Advisor Protections without first seeking stockholder approval. Therefore, RCA stockholders will be able to make an informed decision, now knowing of the Proposed Merger, before voting in the future to potentially restrict their rights and protections under the Charter.

### 2. The Settlement Unbundled the Proposed Amendments, Also Benefitting RCA Stockholders

In soliciting approval of the Proposed Amendments, Defendants asked stockholders to vote on seven separate matters under Proposal No. 8 and four separate matters under Proposal No. 11. *See* Compl. at ¶¶ 60-66. This frustrated corporate suffrage, particularly in regard to stockholders' inability to vote against the elimination of their Roll-Up Protections but in favor of stockholder-friendly changes. *See id.*; *Greenlight Capital, L.P. v. Apple, Inc*., No. 13 Civ. 900 (RJS), 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013). But in withdrawing Proposal Nos. 8 and 11 from the stockholder vote, the Settlement cured the bundling of separate matters in their entirety, avoiding the irreparable harm that would have otherwise resulted. *See id.*, at *9.

This provided a substantial benefit to RCA and its stockholders. *See In re Fab Universal Corp. S'holder Derivative Litig.*, No. 14 Civ 687 (RWS), 2015 WL 7299773, at *3 (S.D.N.Y. Nov. 17, 2015) ("reforms that directly address the issues that gave rise to suit are exactly the type that courts deem to confer a substantial benefit on the company.").

### C. The Proposed Settlement is the Product of Non-Collusive Negotiations by Experienced Counsel

The Settlement was reached after arm's-length negotiations between counsel for the parties, and as such the parties' agreement should be afforded deference by the Court. *See Torres*, 2010 WL 2572937, at *2 (courts should give proper deference to the parties and keep in mind their unique ability to assess the risks and rewards of the litigation) (citations omitted). Fee negotiations were similarly adversarial, and did not begin until the substantive relief had already been negotiated. The parties' agreements on these matters are therefore entitled to substantial deference.

### V. THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

If the Court grants preliminary approval, RCA will notify its stockholders of the proposed settlement substantially in the forms attached as Exhibits B-1 (the "summary Notice") and B-2 (the "long form Notice") to the Stipulation. The forms of Notice set forth the background of the litigation, including the claims asserted in the Action; a summary of the Settlement terms; the date, time and place of the Final Approval Hearing; a statement of RCA stockholders' right to appear and object to the Settlement or the Fee and Expense Award and the procedures which must be followed for objections to be heard; and who to contact for more information about the Settlement. The summary Notice instructs where RCA stockholders can find the long form Notice, which provides additional details regarding the procedural history of the litigation; an explanation of the persons and claims being released under the Settlement; a detailed explanation of the reasons for the Settlement; and a statement that Plaintiff's counsel intends to petition for the Fee and Expense Award and the amount thereof.

Pursuant to the terms of the Stipulation, Plaintiff respectfully requests that the Court order RCA to disseminate the Notice to its stockholders by issuing a Form 8-K incorporating the

long form Notice, posting the long form Notice prominently on RCA's website, and arranging for the publishing of the summary Notice in a newspaper with national circulation (e.g., *The Wall Street Journal*). Courts routinely approve the use of a Form 8-K and publication as adequate and reasonable notice to stockholders of a proposed derivative settlement. *See, e.g.*, *Donoghue v. CSX Corp.*, No. 08 Civil 9252 (MGC), 2009 WL 750232, at *1 (S.D.N.Y. Mar. 9, 2009); *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 n.10 (S.D.N.Y. 1996).

## VI. THE COURT SHOULD ORDER THE SCHEDULE AS SET FORTH IN THE PROPOSED ORDER PRELIMINARILY APPROVING SETTLEMENT AND SETTING SETTLEMENT HEARING

As set forth in the proposed Order Preliminarily Approving Settlement and Setting Settlement Hearing ("Preliminary Approval Order"), which is attached as Exhibit C to the Stipulation, the Court should set a Final Approval Hearing at the Court's convenience on or about November 1, 2016. Plaintiff further proposes the following schedule of events leading up to the Final Settlement Hearing, none of which are opposed by Defendants:

| Item | Deadline |
|---|---|
| Dissemination of Notice to RCA stockholders (Exhibit B-1 and B-2 to the Stipulation) | Within five (5) business days of the entry of the proposed Preliminary Approval Order |
| Filing of Affidavit or Declaration of RCA's Publishing and Posting of the Notice | At least fourteen (14) calendar days before the Final Settlement Hearing. |
| Last day for RCA stockholders to object to the Settlement | Fourteen (14) calendar days before the Final Settlement Hearing. |
| Filing of Plaintiffs' opening brief in support of Final Approval of Settlement | Thirty (30) calendar days before the Final Settlement Hearing. |
| Filing of Plaintiffs' reply brief, if any | Seven (7) calendar days before the Final Settlement Hearing. |
| Final Settlement Hearing | At the Court's convenience, but at least forty-five (45) days after Notice has been disseminated to RCA stockholders. |

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement, approve the Notice, and schedule the Final Settlement Hearing. At that hearing, RCA's stockholders will be given the opportunity to comment on the Settlement and the Fee and Expense Award, and Plaintiff will move for the Settlement to be approved.

Dated: September 8, 2016

Respectfully Submitted,

**GRANT & EISENHOFER P.A.**

*/s/ Daniel L. Berger*
Daniel L. Berger
dberger@gelaw.com
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

**KESSLER TOPAZ
   MELTZER & CHECK, LLP**
Lee D. Rudy
lrudy@ktmc.com
J. Daniel Albert
dalbert@ktmc.com
Michael C. Wagner
mwagner@ktmc.com
Stacey A. Greenspan
sgreenspan@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512

*Attorneys for Plaintiff*